1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

12

13

14

15

16

17

18

ERNEST LEE BRAZZEL,

  Petitioner,

  v.

ALICE PAYNE

  Respondent.

Case No. C04-5892RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**October 28th, 2005**

19

20

21

22

23

24

    This habeas corpus petition has been referred to the undersigned Magistrate Judge pursuant
to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR
4.  Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  All court ordered
briefing has been received.  After review of the entire file, the court concludes that petitioner's
double jeopardy rights were not violated when he was tried twice for a crime which was charged ion
the alternative.

25

26

27

<u>FACTS</u>

    Petitioner is in custody at the McNeil Island Corrections Center pursuant to his 2001

28

REPORT AND RECOMMENDATION-1

1  convictions for one count of first-degree assault and two counts of second-degree assault. (Dkt. #

2  17, Exhibit 1).  The superior court sentenced petitioner to 240 months confinement.  (Dkt. # 17,

3  Exhibit 1).  The Washington state court of appeals summarized the facts and procedural posture of

4  Mr. Brazzel's case as follows:

5          In March 1997, Brazzel and Kottman became romantically involved. In late
       April or early May 1997, at an apartment in the Woodbrook area of Pierce County,
6      they consumed alcohol and crack cocaine. When they left, Kottman dropped Brazzel
       off in the Tillicum area of Pierce County. She then met and accompanied another man
7      to an apartment the location of which is not clear from the record. She and the other
       man engaged in sexual intercourse, which Brazzel apparently observed through a
8      window. Brazzel entered the apartment, grabbed Kottman by the throat and hair, and
       dragged her out to the car. After driving to a different location, he beat her. They
9      later "discuss[ed] the incident" and decided not to "dwell on it."

10         In June 1997, Kottman was fired from her job and lost her apartment. For the
       next few months, she and Brazzel lived out of a car or with friends, except when he
11     was in jail.

12         In July 1997, Brazzel and Kottman were staying with a friend named Jerome
       Johnson. One day, on their way back to Johnson's after smoking crack and drinking
13     elsewhere, Brazzel struck Kottman in the head twice. When they arrived at Johnson's
       Brazzel accused Johnson of looking at Kottman "in the wrong way," "grabbed [him]
14     by the throat and slammed him against the wall[.]" He then took Kottman into a
       bedroom and beat her.
15
           A day or two later, the State charged Brazzel with assaulting Kottman. He
16     pled guilty to unlawful imprisonment and served time in the county jail. He was
       released in October 1997, Kottman met him at the jailhouse door, and they resumed
17     their relationship.

18         From April 15 to April 22, 1998, Brazzel beat Kottman three times while they
       were staying at the home of a friend named Russell Clark. The first time, Brazzel used
19     a broomstick and an aluminum metal crutch, thinking she had engaged in sexual
       intercourse with another man. The second time, he used a crutch, thinking she had
20     engaged in sexual intercourse with Clark. The third time, he beat her so severely she
       had difficulty walking. Clark asked them to leave his home, which they did.
21
           For the rest of April and the first few days of May, Brazzel and Kottman lived
22     with a mother and son named Erika and James Collins. During that time, Brazzel beat
       Kottman twice with a baseball bat.
23
           On May 7, 1998, Kottman and Brazzel moved into their own apartment.
24     About three days later, Brazzel told Kottman that she "wasn't going to be around
       much longer," and that she would die on May 14. He asked where she wanted her
25     body to be found.

26         On May 14, 1998, Brazzel told Kottman that she would not die that day after
       all. He added, however, that she should not "get comfortable."
27

28  REPORT AND RECOMMENDATION-2

On May 15, 1998, Brazzel accused Kottman of having a relationship with another woman. He demanded that she contact the other woman on the phone. When she could not reach the other woman, he beat her with a metal towel rack, a Thunderbird bottle, and a baseball bat. The assault lasted from about 6:00 P.M. to 10:00 P.M., when Kottman lost consciousness.

About 10 A.M. the next morning, Kottman's mother phoned Brazzel and Kottman's apartment. Someone answered the phone, but no one spoke directly into it. Instead, the mother heard "a big crash" and "really severe yells and screams," followed by her daughter pleading "Stop! Stop!" and "Don't!" The mother heard Brazzel say, "You can get up, you mother f[ucker]," then another "slam and slap." The mother called 911.

About ten minutes later, a deputy arrived at the apartment. While still outside, he could hear a male voice yelling angrily and the sounds of "hand slapping skin." When the deputy knocked and identified himself, a male inside the apartment yelled that he had not called the police and would not open the door.

A second deputy had arrived by now, and the two of them forced the door. They entered and found Brazzel kneeling [over] a mattress covered with blankets. Kottman was under the blankets, unresponsive but still breathing. Brazzel said she had been injured in an automobile accident.

Kottman was in the hospital for about a week. She was "entirely purple . . .[and] [h]er eyes were swollen shut" due to "[s]evere blunt force." She went "through a slow state of shock with the dropping pressure and the tachycardia," and that might "have continued had she not been given the volume of . . . blood." She was at "risk for central nervous system injury, where you would have not enough pressure or volume to profuse the brain and not enough blood to get oxygen to the brain."

On May 18, 1998, the State filed an information which, as later amended, charged three counts. Count I alleged attempted first degree murder or, in the alternative, first degree assault, committed between May 10 and May 16, 1998. Count II alleged second degree assault, committed between May 4 and May 11, 1998. Count III alleged second degree assault, committed between April 15 and April 22, 1998.

A jury trial was held later the same year. The jury convicted of first degree assault on Count I, of second degree assault on Count II, and of second degree assault on Count III. Brazzel appealed, and the State conceded that a significant jury instruction was erroneous. Accordingly, we remanded for a new trial.

Before the new trial started, the State offered to prove the uncharged assault on Kottman in March 1997, the uncharged assault on Kottman in July 1997, and the uncharged assault on Johnson in July 1997. Brazzel objected, claiming that each of these assaults was substantially more prejudicial than probative and thus inadmissible under ER 403. The trial court excluded the assault on Johnson but admitted the two uncharged assaults on Kottman. Brazzel then proposed that the court limit the jury's use of the admitted uncharged assaults to the issue of credibility only, and the court agreed to do that.

The new trial commenced on August 2, 2001. Kottman and other witnesses testified essentially as set forth above. Just before Kottman's testimony about the uncharged 1997 assaults, the court orally instructed the jury:

REPORT AND RECOMMENDATION-3

1

2
Before this evidence is allowed, the court advises you that you
may consider evidence on the subject of prior incidents of domestic
violence for the limited purpose of assessing the credibility of the
witness. You must not consider this evidence for any other purpose.

3

4
Brazzel opted not to testify, but he called a medical doctor on the nature and
extent of Kottman's injuries.

5
At the close of the evidence, the trial court reiterated its limiting instruction to
the jury. It stated orally and in writing:

6

7

8
Evidence has been introduced on the subject of Defendant's prior
conviction and prior incidents of domestic violence for the limited
purpose of assessing credibility of a witness and you must not consider
this evidence for any other purpose.

9

10
On August 15, 2001, the jury convicted Brazzel of first degree assault and
two counts of second degree assault. The judge imposed 240 months.

(Dkt. # 17, Exhibit 8).

11

12
In petitioner's first trial the jury was unable to reach a verdict on the charge of first degree

13
murder and convicted petitioner of the alternative charge of first degree assault. (Dkt. # 17, Exhibit

14
18). In Washington state first degree assault is not a lesser included offense of first degree murder.

15
(Dkt. # 17, Ehxibit 18).

16
PROCEDURAL HISTORY

17
In 1998 petitioner was charged with attempted first degree murder or, in the alternative, first

18
degree assault and two counts of assault in the second degree. He was convicted of first degree

19
assault as well as two counts of assault in the second degree and given an exceptional sentence of

20
456 months. (Dkt. # 17, Exhibit 2). He appealed and received a new trial based on an erroneous

21
jury instruction. (Dkt. # 17, Exhibit 4). In 2001 he was again charged with attempted first degree

22
murder or, in the alternative, first degree assault and the two counts of assault in the second degree.

23
He was again convicted of first degree assault as well as two counts of second degree assault and

24
sentenced to 240 months. (Dkt. # 17, Exhibit 1).

25
Petitioner's counsel appealed the conviction and raised only one issue. The error alleged was

26
with regard to the admission of testimony regarding prior bad acts on the ground that the testimony

27
was more prejudicial than probative. (Dkt. # 17, Exhibit 6). In a *pro se* supplemental brief petitioner

28
REPORT AND RECOMMENDATION-4

1  raised the following issues:

2          (1) Whether Trial Court violate Brazzel's Constitutional Right to fair trial
when the alternative means of committing Premeditated First Degree Murder is an
3  improper means, and (2) Did the State prove beyond a reasonable doubt that Brazzel
committed First Degree Assault lack sufficient evidence, and (3) Did the Trial Court
4  abuse its discretion when it fail to dismiss charges after State failed to make case.
(Prima Facie).

5

6          . . .

7          Now, when this Court remand Brazzel back to the Trial Court for further
proceedings assuming consistent with the opinion of this Court. (The to convict
8  instructions), as to the assault charges, Brazzel was retried on the Attempted Murder
1st Degree in violation of the Fifth Amendment to the United States Constitution and
9  Article One Sub-section Nine. No person shall be twice put in Jeopardy for the same
offense. Art 1 SS9. Nor shall any person be subject for the same offense to be twice
10  put in jeopardy of life or limb. Amendment V.

11          . . .

12          Likewise, Brazzel asserts, as did <u>Schoel</u>, 54 Wash 2d 388, that when the jury
returned a verdict of guilty of the alternative charge of First Degree Assault, they also
13  acquitted him of the higher degree offense, Attempted Murder First Degree.
Therefore Brazzel should not have been placed in jeopardy twice for the same offense
14  after acquittal/conviction and for this reason couple with others, this case should be
dismissed with prejudice.

15
(Dkt. # 17, Exhibit 7).  The state court of appeals affirmed the conviction.  (Dkt. # 17, Exhibit 8).
16
Petitioner filed for discretionary review and raised the following issues:
17
                ARGUMENT WHY REVIEW SHOULD BE ACCEPTED
18
Petitioner asserts that the Court of Appeals misapplied the law in affirming his
19  conviction for the following reasons:

20          1.      The Trial Court erred by not excluding the two uncharged assaults
from 1997. Although the (COA) relied upon "Powell and Stenson, there finding's of
21  fact did not turn upon there conclusions of law. For example, the (COA) contends
that the Trial Court had discretion whether or not to exclude the two uncharged
22  assaults asserting that the State offered the two assaults from 1997 in part to prove
that the tumultuous nature of Brazzel and Kottmans relationship had motivated
23  Brazzel to commit the charged assaults. I disagree, however, see <u>STATE v.</u>
<u>THEREOFF</u>, 95 Wn.2d 385, 389, 622 P.2d 1240 (1980); and RCW 10.61.006, which
24  states that; In all other cases the defendant may be found guilty of an offense, the
commission of which is necessarily included within that with which he is charged in
25  the indictment or information. Motivation was not at issue. Here, in the present case,
the (COA) asserts that "(error may not be predicted upon a ruling which
26  admits…evidence unless a substantial right of the party is affected)". On the other
hand, or put another way, Brazzel's rights under the Sixth and Fourteenth (6-14)
27  Amendments were violated as a result to this finding.

28  REPORT AND RECOMMENDATION-5

2.      As to the sufficiency of the evidence, Brazzel has only one question for this Court to contemplate. That is; How long…will evidence be viewed in favor of the State and strongly against a defendant. Where, any rational trier of fact could have found guilt beyond a reasonable doubt. What if a man be found guilty for a crime he did not commit, but there is evidence in the record suggesting a minor crime was committed. Where is the "in favor of the State and most strongly against the defendant? It is not enough that the jury disbelieve the State's evidence. Instead, some evidence at some point must be presented which affirmatively establishes the defendants theory on the case instead of the "most favorable to the State and most strongly against the defendant.

<u>DOUBLE JEOPARDY</u>

Brazzel asserted in his Pro se Brief that he should not have been tried for Attempted First Degree Murder in the second trial, given that the jury in the first trial had acquitted him of that crime. However, the Court of Appeals contends that; "If his claim is valid, we should dismiss the charge of Attempted First Degree Murder". This analysis is incorrect for two reasons. First, Brazzel did not assert in his claim of Double Jeopardy that the First Degree Attempted Murder should be dismissed. On the contrary, he asserted under Double Jeopardy that he should be remanded back to the Trial Court and given a new trial. Secondly, in the application of <u>STATE v. AGREN</u>, 28 Wn. App. 1, 622 P.2d 388 it was held that Agren was unconstitutionally "twice put in jeopardy" in violation of the Fifth Amendment to the United States Constitution and Article 1, Section 9 of the Constitution of the State of Washington. See also <u>GREEN v. UNITED STATES</u>, 355 U.S. 184, 2 L.Ed.2d 199, 78 S.ct. 221, 6 A.L.R. 2d 1119 (1957); and <u>STATE v. SCHOEL</u>, 54 Wn.2d 388, 341 P.2d 481 (1959). This Court must recognize that in a claim of Double Jeopardy, the suggested remedy is not to assume that the case is moot but that reversal is mandatory. <u>AGREN</u> 28 Wn. APP. at 388.

(Dkt. # 17, Exhibit 9, pages 3 to 5).  Review was denied without comment on June 2nd, 2004.  (Dkt. # 17, Exhibit 10).

This habeas petition was filed and petitioner raises only one issue.  Petitioner claims charging him with attempted murder in the first degree at his second trial violated his right against double jeopardy because he was acquitted of that crime in the first trial.  (Dkt. # 7).

Contrary to petitioner's allegation he was not acquitted on the attempted murder in the first degree charge in the first trial.  The jury did not reach a decision on that charge and convicted petitioner of the alternative charge of assault in the first degree.  (Dkt. # 17, Exhibit 18).

<u>EVIDENTIARY HEARING</u>

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously

REPORT AND RECOMMENDATION-6

1  unavailable, or (2) a factual predicate that could not have been previously discovered through the

2  exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by

3  clear and convincing evidence that but for constitutional error, no reasonable fact finder would have

4  found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

5      Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not

6  set forth any factual basis for his claims that could not have been previously discovered by due

7  diligence.  Given the record in this case, the facts underlying petitioner's claims are insufficient to

8  establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner

9  is not entitled to an evidentiary hearing.

10                          <u>STANDARD OF REVIEW</u>

11      A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

12  merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary

13  to, or involved an unreasonable application of, clearly established federal law, as determined by the

14  Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the

15  facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d). Under the "contrary

16  to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion

17  opposite to that reached by the Supreme Court on a question of law or if the state court decides a

18  case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Williams v.</u>

19  <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal habeas

20  court may grant the writ if the state court identifies the correct governing legal principle from the

21  Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

22  <u>Id</u>.

23      A determination of a factual issue by a state court shall be presumed correct, and the

24  applicant has the burden of rebutting the presumption of correctness by clear and convincing

25  evidence. 28 U.S.C. §2254(e)(1).

26

27                            <u>DISCUSSION</u>

28  REPORT AND RECOMMENDATION-7

1    Certain facts are key to the court's analysis of this case.  First, under Washington law the

2    crime of first degree assault is not a lesser included offense of first degree attempted murder.  This

3    fact was carefully noted by the superior court judge who denied a motion to dismiss the attempted

4    murder charge at the second trial.  (Dkt. # 17, Exhibit 18).  Second, the jury in 1998 did not acquit

5    petitioner of the crime of attempted first degree murder.  (Dkt. # 17, Exhibit 14 verdict form A).

6    The jury left that verdict form blank as they were not unanimous and instead convicted of an

7    alternative crime, assault in the first degree.  (Dkt. # 17, Exhibit 14 verdict form B).

8    When petitioner prevailed in his first appeal the state was able to recharge both crimes in the

9    alternative because petitioner had never been acquitted of either crime and the concept of continuing

10   jeopardy applies.  The initial jeopardy a person is placed under does not terminate at the time of their

11   conviction.  That jeopardy continues through the full course of the criminal proceedings.  Price v.

12   Georgia, 398 U.S. 323, 329 (1970).  Where the crime of conviction is a lesser included offense a

13   finding of guilty implies an acquittal on the greater offense.  Here, because the crime of conviction is

14   not a lesser included offense there was no acquittal and the juries silence indicates they were not

15   unanimous on the charge of attempted murder in the first degree.  As there was no acquittal jeopardy

16   did not terminate and the state was able to recharging both attempted first degree murder and first

17   degree assault.  See generally, State v. Hescock, 98 Wn. App. 600 (1999).  The superior court judge

18   who denied the motion to dismiss properly identified the issue and applied the proper legal

19   precedent.  (Dkt. # 17, Exhibit 18).

20   The state court of appeals held if plaintiff's double jeopardy claim was valid only the first

21   degree murder charge would be dismissed and because that charge was now dismissed, "essentially

22   acquitted", the contention was moot.  (Dkt. # 17, Exhibit 8).  The court disagrees with the

23   contention that there was ever an acquittal or that the conviction, on an alternative charge, acted as

24   an acquittal given the facts of this case.  Further, the claim would not be moot if there had been an

25   acquittal and remand would have been proper.

26   However, the decisions of the state court of appeals and state supreme court affirming the

27   conviction did not result in a decision that was contrary to, or involved an unreasonable application

28   REPORT AND RECOMMENDATION-8

1   of, clearly established federal law, as determined by the Untied States Supreme Court.  The petitioner

2   is therefore not entitled to relief.

3                                              <u>CONCLUSION</u>

4          Petitioner is not entitled to relief in this case.  The superior court properly denied a motion to

5   prevent retrial on the charge of attempted first degree murder given the facts of this case because

6   Washington state's crime of first degree assault is not a lesser included offense of attempted first

7   degree murder.  The juries failure to convict on the attempted murder charge and conviction on an

8   alternative crime does not amount to an acquittal.  The state appellate courts affirming the conviction

9   was therefore proper.  This petition should be **DISMISSED.**  A proposed order accompanies this

10  report and recommendation.

11         Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

12  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

13  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

14  appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

15  72(b), the clerk is directed to set the matter for consideration on **October 28$^{tth}$,  2005**, as noted in

16  the caption.

17

18         DATED this 3rd day of October, 2005.

19

20

21

22

23

24                                              Karen L. Strombom
                                                United States Magistrate Judge
25

26

27

28  REPORT AND RECOMMENDATION-9